# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 04-1601

———————

United States of America,　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　　Appellee,　　　　　　*
　　　　　　　　　　　　　　　　　*　Appeal from the United States
　　　v.　　　　　　　　　　　　　*　District Court for the
　　　　　　　　　　　　　　　　　*　Western District of Missouri.
Alonzo F. Ellerman,　　　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　　Appellant.　　　　　 *

———————

Submitted: October 29, 2004
Filed: June 20, 2005

———————

Before WOLLMAN, MORRIS S. ARNOLD, and SMITH, Circuit Judges.

———————

SMITH, Circuit Judge.

Alonzo F. Ellerman was found guilty of conspiracy to distribute 500 grams or more of methamphetamine (count one) and being a felon in possession of a firearm (count two). He was sentenced[1] to 360 months on count one and 120 months on count two, with the sentences to run concurrently. On appeal, Ellerman raises five arguments challenging his conviction on count one and his sentence. Specifically, he avers that the district court erred in: (1) failing to dismiss the indictment or suppress evidence of his cooperation; (2) refusing Ellerman's proffered jury instruction "A";

———————

[1]The Honorable Richard E. Dorr, United States District Judge for the Western District of Missouri.

(3) refusing Ellerman's proffered jury instruction "B"; (4) concluding Ellerman was a career offender; and (5) in applying a two-level upward adjustment to Ellerman's sentence for obstruction of justice. We find no error and affirm Ellerman's conviction and sentence.

## I. *Background*

Narcotics and drug paraphernalia were found in Ellerman's Branson, Missouri, residence. Ellerman admitted owning and using the drugs and pleaded guilty to a state narcotics possession charge. In January 2002, Ellerman then began cooperating with police in an investigation of his acquaintances suspected of dealing in narcotics. Howard Neustel and Michael R. Burns were believed to be sellers and manufacturers of methamphetamine. Ellerman met with Officer Britton of the COMET[2] Drug Task Force. Ellerman told Britton that Burns was his drug supplier. Ellerman admitted purchasing ½ to 1½ ounces of methamphetamine from Burns which he would resell in 1ounce to 1 gram quantities. Ellerman also admitted receiving methamphetamine from Neustel.

To document his cooperation, Ellerman signed a COMET Informant Memorandum. Pursuant to the agreement, Ellerman was to cooperate fully, truthfully, and honestly with law enforcement, not to possess or use drugs during this period, not to commit future crimes, and to report to Britton in a timely manner when required. In exchange, the police agreed to inform the prosecutor of Ellerman's cooperation on a case by case basis. On January 25, 2002, with instructions from Britton, Ellerman purchased ⊂ ounce of methamphetamine from Neustel. He also arranged a buy between Britton and Neustel where Britton purchased 3½ grams of methamphetamine. Britton made a third purchase without Ellerman's involvement. Neustel was subsequently arrested. Britton had no contact with Ellerman after

---

[2]Combined Ozarks Multi-Jurisdictional Enforcement Team.

January 31, 2002. Police terminated Ellerman's informant status in the spring 2002 after a search of his home uncovered narcotics, and because Ellerman was suspected of having disclosed Britton's identity as an undercover narcotics officer.

After Neustel's arrest, he also began cooperating with police and implicated Burns as the head of their drug operation. Neustel helped the police make a controlled purchase from Burns leading to Burns's arrest and his indictment on a charge of conspiracy to distribute methamphetamine. Burns sold Britton one ounce of methamphetamine and fronted him a second ounce. Burns talked freely with Britton about his drug activities.

Neustel's account of the development of the conspiracy implicated Ellerman as an actual participant in methamphetamine distribution and not merely as a user. Neustel told how he received small quantities of methamphetamine from Burns for resale. Burns introduced Neustel to Ellerman in the summer of 1998.[3] Neustel observed Burns distribute methamphetamine to Ellerman and eventually Neustel himself distributed methamphetamine to Ellerman.

Neustel, as a sort of bookkeeper, kept a drug ledger that recorded the organization's drug sales. The drug ledger listed the person who purchased methamphetamine, payments received, new purchases, and an ending balance. The ledger also tracked purchases from Burns. Ellerman's name appeared in the ledger approximately eighteen times. Neustel distributed about 342¼ grams of

---

[3]A search warrant was served on Burns in April of 1998. In a search of his house, officers seized a small amount of methamphetamine, scales, four vials, snorting devices, a scanner, surveillance equipment, hundreds of baggies, eight firearms, and an address book with the name "Lonzo." In August 1999, Burns's vehicle was searched by California highway patrol. Officers found a jar with 340.61 grams of methamphetamine.

-3-

methamphetamine and received $20,580.00, plus several guns from Ellerman as payment.

Before trial, Ellerman filed a motion to dismiss, or in the alternative, to suppress the evidence obtained as the result of his cooperation. The district court denied the motion and found that Ellerman's Informant Agreement with COMET was not binding on the government, that Ellerman had breached his agreement with COMET by possessing methamphetamine, and that evidence showed Ellerman disclosed Britton's identity to Burns.

Prior to submission to the jury, the district judge refused Ellerman's requested jury instructions on his theory of defense (jury instruction "A") and on his being a user or possessor of methamphetamine as opposed to a dealer (jury instruction "B"). The jury found Ellerman guilty of conspiracy to distribute and being a felon in possession. At sentencing, the court determined Ellerman was a career offender under the United States Sentencing Guidelines and gave him a two-level enhancement for obstruction of justice.

## II. *Discussion*
### A. *Dismissal of the Indictment and Suppression of Evidence*

Ellerman first argues that the government acted in bad faith by charging him with conspiracy after he cooperated with local police and by using evidence gained from his cooperation and not requesting a downward departure. Ellerman contends that the district court erred in refusing to dismiss the indictment or suppress the evidence obtained from his cooperation. Critical to this argument, is Ellerman's allegation that he had a cooperation agreement with the government. The only agreement that Ellerman signed was with COMET, a non-federal entity. *United States v. Glauning*, 211 F.3d 1085, 1087 (8th Cir. 2000) (state and local government officials have no power to bind the federal government). Assuming arguendo that COMET could have bound the government, Ellerman's lack of full cooperation would

excuse any non-performance on the government's part. The COMET agreement specified:

> I understand that if it becomes apparent, for whatever reason or from whatever source, that I have not fully cooperated as required by this agreement, this agreement will become null and void and law enforcement authorities may immediately present evidence, including information provided by me pursuant to this agreement, to a federal and/or state prosecuting authority for charge(s) on all known violations of the law.

The benefits under this agreement were contingent upon Ellerman's full cooperation. Part of that cooperation required that Ellerman refrain from drug use. Ellerman does not dispute that he illegally used drugs at the time that he was cooperating with COMET. COMET officers, during their investigation, not the government during its prosecution, terminated the agreement with Ellerman for his misconduct. Because the government had no agreement with Ellerman, there is no basis for suppressing evidence.[4]

### B. *Jury Instruction "A"*

Ellerman contends that the district court abused its discretion in refusing to give his offered instruction "A" regarding multiple conspiracies. According to Ellerman, if the government failed to prove beyond a reasonable doubt that he was involved in a conspiracy that lasted from April 1998 through July 2002, the jury must acquit. Ellerman maintains that the actual conspiracy began at the earliest in 2000 and with only few "isolated" events to 2002. We review for abuse of discretion an

---

[4]Ellerman neglected to object to the government's decision not to move for a downward departure as instructed by the district judge. Consequently, the government's action must be reviewed as plain error. *United States v. Pirani*, No. 03-2871, slip op., 6 (8th Cir. Apr 29, 2005). We find no plain error.

accused's challenge to a court's refusal to give a specifically worded theory of defense instruction. *United States v. Gonzales*, 90 F.3d 1363, 1371 (8th Cir. 1996).

Ellerman argues for the existence of two separate conspiracies—one conspiracy to distribute methamphetamine from 1998 to 1999 and another to distribute larger amounts of methamphetamine from 2000 to 2002. Ellerman cites *United States v. England*, 966 F.2d 403, 406 (8th Cir. 1992) for support. But *England* only indicates that the existence of multiple conspiracies is a fact question for the jury. The critical issue is, can a reasonable jury conclude a single conspiracy existed?

Ellerman is entitled to a theory of defense instruction "if a timely request is made, the evidence supports the proffered instruction, and the instruction correctly states the law." *United States v. Risch*, 87 F.3d 240, 242 (8th Cir. 1996) (citing *United States v. Cheatham*, 899 F.2d 747, 751 (8th Cir. 1990)). The district court evaluates "the adequacy of instructions by reviewing them as a whole." *United States v. McQuarry*, 726 F.2d 401, 402 (8th Cir. 1984) (per curiam).

According to the evidence, during a search of Burns's residence in 1998, police found an address book with the name Lonzo and a phone number. Neustel was introduced to Ellerman in the summer of 1998. Sometime later, Neustel began observing methamphetamine transactions between Burns and Ellerman. Neustel supplied Ellerman and Ellerman had a long-standing relationship with Burns to move a large quantities of methamphetamine for Burns. In exchange, Ellerman received a lower price for methamphetamine supplies. While the evidence is somewhat unclear as to the dates of Ellerman's involvement, we must consider the totality of the circumstances, "including the nature of the activities involved, the location where the alleged events of the conspiracy took place, the identity of the conspirators involved, and the time frame in which the acts occurred." *United States v. McCarthy*, 97 F.3d 1562, 1571 (8th Cir. 1996). Given the evidence before the trial court, we cannot say

there was an abuse of discretion for not giving a multiple conspiracy instruction. No reasonable jury would conclude that two conspiracies existed.

## C. *Jury Instruction "B"*

Ellerman also contends the district court abused its discretion in failing to give his offered instruction "B," regarding his being a user and addict, but not a dealer or distributor, of methamphetamine. We review an accused's challenge to a court's refusal to give a specifically worded theory of defense instruction for abuse of discretion. *Gonzales*, 90 F.3d at 1371.

In denying Ellerman's motion, the district court found that its jury instructions covered the subject matter in Ellerman's proffered instruction. *United States v. Liebo*, 923 F.2d 1308, 1312 (8th Cir. 1991) (an accused is not entitled to a particular jury instruction if its subject matter is adequately and substantially covered by other instructions). In reviewing the record, the only possible similar instruction given was Instruction number 20:

> You should understand that merely being present at the scene of an event, or merely acting in the same way as others or merely associating with others, does not prove that a person has joined in an agreement or understanding. A person who has no knowledge of a conspiracy but who happens to act in a way which advances some purpose of one, does not thereby become a member.

Instruction number 20 does not address the subject matter of Ellerman's proposed instruction. Thus, no other instruction actually covered the subject matter of Ellerman's proposed instruction. However, that fact alone is insufficient for reversal if additional evidence does not support the requested instruction. *Risch*, 87 F.3d at 242.

At trial, the evidence established Ellerman was consistently receiving quantities of methamphetamine from Neustel and Burns for distribution. Neustel's drug ledger showed Ellerman obtained approximately 342¼ grams of methamphetamine from Neustel during the conspiracy. Neustel characterized Ellerman as his top salesman and Ellerman admitted obtaining ½ to 1½ ounces of methamphetamine from Burns on a regular basis.

Ellerman bases his claim on the testimony of his expert witness, former police officer Rodney Burk.[5] Ellerman's reliance on Burk's testimony is misplaced. Burk had not worked as a police officer since 1991 and admitted his opinions were based on reports provided by Ellerman's attorney, not personal interviews. Although Burk testified Ellerman's name did not frequently appear in Neustel's drug ledger, he later admitted he was unsure which ledger entries referred to Ellerman. Burk admitted that if someone purchased an ounce of methamphetamine and then bought another ounce a week later, as did Ellerman, it was not for personal use. Burk also conceded that possession of a large amount of unused baggies in close proximity to methamphetamine could be indicative of distribution. Ellerman has not shown that the district court abused its discretion in rejecting the proffered instruction.

D. *Ellerman's Booker Claims*

The district court concluded Ellerman was part of a criminal conspiracy that began within 15 years of his release from custody on prior state felony convictions and therefore sentenced him as a career offender pursuant to U.S.S.G. § 4B1.1.[6]

_____

[5]At trial, Burk, a retired Springfield Police Department officer, testified that Ellerman was a methamphetamine user and not a dealer and that it was not unusual for a user caught with possession of drugs to inflate his credentials claiming to be more than a user. He also indicated that informants retaliate against other informants, and that Ellerman's appearance in the drug ledger was infrequent.

[6]Providing that a defendant with at least two prior felony convictions of either a crime of violence or controlled substance offense may be sentenced as a career

Ellerman was convicted of burglary and stealing on April 9, 1979. He received a suspended sentence and five years' probation. On March 26, 1982, Ellerman was convicted of second-degree assault and sentenced to five years. Because of the assault conviction, Ellerman's probation was revoked and he was sentenced to five years to run concurrently with the assault conviction. Ellerman was released on parole on December 13, 1983. He was convicted for second degree burglary on December 3, 2002. The district court held Ellerman to be a career offender based on the 1982 and 2002 convictions.

Ellerman argues that because he was released on parole on December 13, 1983, the government must prove he joined the conspiracy prior to December 13, 1998—the 15-year period. Ellerman contends the government did not meet its burden of proof because the only evidence that predates December 13, 1998 is Burns's address book with the name Lonzo and a phone number, along with Neustel's reference to probably meeting Ellerman in the summer of 1998, and, that at some unknown date later, Neustel saw Ellerman receive methamphetamine from Burns.

Ellerman objected to being sentenced as a career offender. We review *de novo* whether the district court correctly applied the Guidelines. *United States v. Mashek*, No. 04-2560, slip op., 7-8 (8th Cir. May 10, 2005). In *United States v. Kennedy*, 32 F.3d 876 (4th Cir. 1994), the Fourth Circuit held, in determining the date of the instant offense for purposes of calculating the 15-year period, that the district court should consider all relevant conduct. *Id.* at 890; U.S.S.G. § 4A1.2, Commentary n.8. Relevant conduct includes "all acts . . . committed [or] aided . . . by the defendant" and when a conspiracy is involved "all reasonably foreseeable acts and omissions of others in furtherance of the [conspiracy]" that occurred "in *preparation* for that

offender if the sentences were imposed within 15 years of the commission of the instant offense or the sentences resulted in the defendant being incarcerated during any part of the 15-year period. *See* U.S.S.G. § 4B1.1.

offense." *Kennedy*, 32 F.3d at 890 (emphasis in original); U.S.S.G. § 1B1.3(a)(1). Activities that occurred before the date identified by the indictment as the starting date for the offense are included. *Kennedy*, 32 F.3d at 890. The commentary to U.S.S.G. 1B1.3 indicates that "'[c]onduct that is not formally charged or is not an element of the offense of conviction may enter into the [sentencing] determination.'" *Id.*; *United States v. Strachan*, 968 F.2d 1161, 1163 (11th Cir. 1992) (relevant conduct includes "conduct which is not formally charged or adjudicated.").

The instant conspiracy began before December 13,1998, and Ellerman's acts, even though small, are nonetheless relevant when determining career offender status, as are those of the other conspirators. Neustel met Burns in spring 1998. Neustel received small quantities of methamphetamine from Burns for distribution. A search warrant served on Burns in April 1998 revealed methamphetamine, drug paraphernalia, and a black address book that identified Ellerman as Lonzo. Neustel was introduced to Ellerman in summer 1998. Ellerman had a long standing relationship with Burns. Sometime later, Neustel observed Burns distribute methamphetamine to Ellerman and eventually also distributed methamphetamine to Ellerman. By joining the conspiracy, Ellerman participated in, and is liable for, all prior co-conspirators' actions that furthered the conspiracy. *Kennedy*, 32 F.3d at 890. These actions predated winter 1998.

Ellerman also objected to receiving a two-level enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1. We review *de novo* whether the district court correctly applied the Guidelines. *Mashek*, slip op. at 7-8. The enhancement was based on Ellerman's disclosure of Britton's identity to Burns. Under Britton's direction, Neustel attempted to arrange a methamphetamine transaction between Britton and Burns. However, prior to the transaction, Burns contacted Neustel and told Neustel that he was concerned about dealing with Britton because Ellerman told him Britton was a police officer. Burns told Neustel that Ellerman stated "they've got [Neustel] on three counts of selling, three felony counts of selling to an undercover cop." Burns

indicated that Ellerman described Britton in detail, including his vehicle and undercover name. Ellerman denied that he disclosed Britton's identity. The district court found this testimony convincing and corroborated by Burns's changed demeanor and later method of transacting business.

An enhancement for obstruction of justice is appropriate where the misconduct occurs with knowledge of an investigation or at least the correct belief that an investigation is underway. *United States v. Dierling*, 131 F.3d 722, 738 (8th Cir. 1997). The government bears the burden of proof that an obstruction enhancement should apply. *United States v. Cox*, 985 F.2d 427, 432 (8th Cir. 1993). Ellerman was aware that there was an ongoing investigation at the time that Britton's identity was disclosed because Ellerman believed that he was still operating under an informant agreement with COMET. Neustel provided adequate proof that Ellerman told Burns Britton was a police officer. That testimony was reasonably accepted by the district court.

We find that in both instances the district court correctly applied the guidelines. However, our analysis does not stop there because in his supplemental brief, Ellerman argues that his sentence violates the mandates of *United States v. Booker*, 125 S. Ct. 738 (2005). Because Ellerman failed to raise a Sixth Amendment *Apprendi*-type claim,[7] we review for plain error, *Pirani*, slip op. at 6, under the four-part test of *United States v. Olano*, 507 U.S. 725 (1993). Under that test

> there must be (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an

---

[7]"The argument that a *Booker* error occurred is preserved if the defendant below argued *Apprendi* or *Blakely* error or that the Guidelines were unconstitutional." *United States v. Antonakopoulos*, 399 F.3d 68, 76 (1st Cir. 2005); *see United States v. Sayre*, 400 F.3d 599, 603 (8th Cir. 2005) (Grunder, J., concurring). Ellerman failed to argue any of these issues.

appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

*Pirani*, slip op. at 7 (citing *Olano*, 507 U.S. at 732). In *Pirani* we resolved that "the third *Olano* factor turns on whether [a defendant] has demonstrated a reasonable probability that he or she would have received a more favorable sentence with the *Booker* error eliminated by making the Guidelines advisory." *Id.* at 10. In reviewing the record, we find no indication that the district court would have given Ellerman a more favorable sentence under an advisory Guideline scheme.

Finally, we must review Ellerman's sentence for reasonableness. *Booker*, 125 S. Ct. at 765; *Mashek*, slip op. at 8. In doing so, we find that Ellerman's sentence is reasonable.

For the foregoing reasons, we affirm the conviction and sentence.

_____