# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1512

_____

United States of America,           \*

                            \*

          Appellee,         \*

                            \*   Appeal from the United States

     v.                    \*   District Court for the Western

                            \*   District of Missouri.

Michael R. Burns,            \*

                            \*

          Appellant.       \*

_____

Submitted: October 29, 2004

Filed: December 28, 2005 **(Corrected 3/28/06)**

_____

Before WOLLMAN, ARNOLD, SMITH, Circuit Judges.

_____

ARNOLD, Circuit Judge.

Michael Burns was convicted by a jury of one count of conspiracy to distribute 500 grams or more of methamphetamine, *see* 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846, and two counts of distribution of 50 grams or more of methamphetamine, 21 U.S.C. § 841(a)(1), (b)(1)(B), and sentenced by the district court to 360 months in prison. On appeal, he contends that prejudicial error occurred during his trial and that his sentence is excessive. We affirm Mr. Burns's conviction, but we remand to the district court for resentencing.

I.

Mr. Burns first argues that the district court should have granted his request for a mistrial after Officer Scott Britton was allowed to testify to a post-arrest hearsay statement of co-defendant Alonzo Ellerman that inculpated Mr. Burns. We conclude that the district court's refusal to grant a mistrial was not reversible error.

In *Bruton v. United States*, 391 U.S. 123, 135-36 (1967), the Court held that "the admission of a non-testifying defendant's statement that inculpated a codefendant, violated the latter's Confrontation Clause rights, despite a curative instruction otherwise." *United States v. Coleman*, 349 F.3d 1077, 1085 (8th Cir. 2003), *cert. denied*, 541 U.S. 1055 & 1080 (2004). Prior to trial, the district court granted the government's motion to sever the trials of Mr. Burns and Mr. Ellerman in order to avoid a potential confrontation-clause problem based on the admission of Mr. Ellerman's post-arrest statement. *Cf. United States v. Ellerman*, 411 F.3d 941 (8th Cir. 2005). Mr. Ellerman was not present at Mr. Burns's trial.

In its case in chief against Mr. Burns, the government presented the testimony of Officer Britton, the investigating officer and a member of a regional drug task force (the Combined Ozarks Multijurisdictional Enforcement Team (COMET)), but it did not ask him about Mr. Ellerman's statement. By questioning the officer, the government established that after methamphetamine was found at Mr. Ellerman's residence, Mr. Ellerman agreed to cooperate and to set up a drug transaction with another co-defendant, Howard Neustel. Mr. Neustel later agreed to assist the government and testified against Mr. Burns at his trial.

Mr. Burns's counsel sought to challenge Mr. Neustel's credibility through his cross-examination of Officer Britton. Counsel began by asking the officer about a report of Mr. Ellerman's interview with COMET (during which the statements inculpating Mr. Burns occurred). The attorney then inquired whether "as a result of conversations" with Mr. Ellerman, COMET had "focus[ed] on this Mr. Neustel." After establishing that Mr. Ellerman had assisted COMET in making controlled

purchases from Mr. Neustel, counsel inquired whether "anybody had tossed around Mr. Burns's name" by the time of Mr. Neustel's second purchase; the officer (after being sure that he had heard the question correctly) responded that COMET learned of Mr. Burns during its interview with Mr. Ellerman. Counsel asked Officer Britton whether based on the "conversations with Mr. Ellerman, [Officer Britton] suspect[ed] that Mr. Neustel was a major dealer of some kind." At another point in cross-examination, Mr. Burns's attorney asked Officer Britton to identify the report of Mr. Ellerman's interview, although it was not introduced into evidence. Finally, after questioning the officer about Mr. Neustel's arrest and subsequent statement to law enforcement, Mr. Burns's counsel asked whether COMET had any "independent corroboration of anything [Mr. Neustel] told you at that point."

Mr. Burns argues that he was entitled to a mistrial because on redirect examination, the government elicited from Officer Britton post-arrest statements of Mr. Ellerman that incriminated Mr. Burns. Over counsel's objection, the government asked about whom, in addition to Mr. Neustel, Mr. Ellerman had identified as a methamphetamine supplier. Officer Britton responded that Mr. Ellerman had named Mr. Burns and had said that he (Mr. Ellerman) hoped that by Officer Britton meeting Mr. Neustel first, the officer would "build ... credibility," which would then lead to a purchase from Mr. Burns. At that point, Mr. Burns's counsel asked for a mistrial, which was denied. The government also elicited testimony that, according to Mr. Ellerman, Mr. Burns had been making trips to California and "purchasing 1 pound to 1½ pounds of methamphetamine" at a time.

No doubt Mr. Ellerman's incriminating hearsay statements normally would be inadmissible because of his right to confront the witnesses against him. *See Bruton*, 391 U.S. at 135-36. But we have said that "there can be no reversible error" "where the defendant 'opened the door,' " and that the court may admit "otherwise inadmissible evidence to clarify or rebut an issue opened up by defense counsel on cross-examination," *United States v. Beason*, 220 F.3d 964, 968 (8th Cir. 2000) (internal quotations omitted).

We believe that here the cross-examination of Officer Britton was likely to give the jury the false impression that Mr. Ellerman had named Mr. Neustel as the primary actor in the drug conspiracy because COMET "focus[ed]" on Mr. Neustel based on its conversations with Mr. Ellerman. And we think that this impression may have been bolstered when counsel asked whether Mr. Ellerman's statement created suspicions that "Mr. Neustel was a major drug dealer of some kind," even though Officer Britton denied that he had such a suspicion "[a]t that time." In addition, it seems to us that Mr. Burns's counsel sought through his questions to create an inference that Mr. Neustel's statements inculpating Mr. Burns had no "independent corroboration," although, in fact, they were supported by Mr. Ellerman.

Mr. Burns correctly states on appeal that he did not ask Officer Britton to repeat what Mr. Ellerman had said, but we do not believe that resolves the issue. Counsel repeatedly referred to the statement and created confusion about its content. When, as here, "defense counsel leaves a false impression after cross-examining a witness, the court may allow the use of otherwise inadmissible evidence on redirect to clarify the issue." *United States v. Womochil*, 778 F.2d 1311, 1317 (8th Cir. 1985). We therefore conclude that here the government properly questioned Officer Britton to clear up the false impressions created during cross-examination.

In addition, we believe that even assuming that the government's questions should have been prohibited, any error was harmless beyond a reasonable doubt. *See Coleman*, 349 F.3d at 1086. The government introduced testimony from Mr. Neustel and Kimberly Tally, a friend of Mr. Burns, that Mr. Burns had been purchasing methamphetamine from California in large quantities. We are not persuaded by Mr. Burns's contention that Mr. Ellerman's statements to the same effect were "compelling and forceful" because "a government agent" testified to them. The jury was well aware that Officer Britton was merely repeating the words of a co-conspirator, who had decided to cooperate with the police. The evidence of Mr. Ellerman's hearsay statement was cumulative, and the other evidence of Mr. Burns's guilt was overwhelming. *Cf. id.* at 1086-87.

-4-

## II.

Mr. Burns maintains that he was entitled to a mistrial because the government improperly shifted the burden of proof by commenting during closing argument on his failure "to negate key government evidence." We review the denial of a mistrial based on prosecutorial misconduct for an abuse of discretion. *United States v. Conroy*, 424 F.3d 833, 840 (8th Cir. 2005). For reversible error to exist, the government must have engaged in improper conduct that prejudicially affected Mr. Burns's substantial rights so as to deprive him of a fair trial. *Id.*

During trial, the government introduced evidence showing that in 1999 an officer from the sheriff's department of San Bernardino County, California, arrested Mr. Burns after stopping him for a traffic violation and seized over 340 grams of methamphetamine from his car. A "criminalist" in the sheriff's department testified that the substance, which she determined through testing to be methamphetamine, would have been destroyed a year later in accordance with standard department procedures. According to a government witness, the procedure was necessary because of the large amount of drugs seized in San Bernardino County. When questioning witnesses from the sheriff's department, defense counsel emphasized that he could not have independent testing conducted to counter the state's findings because the evidence had been destroyed.

According to Mr. Burns, the government improperly shifted the burden of proof in closing argument when it addressed the substance seized in California, as well as when it spoke of an automobile bottle jack that Mr. Burns allegedly used to hide methamphetamine. The government argued to the jury that there was a "good reason" that the sheriff's department did not keep evidence in drug cases. It then added that Mr. Burns, while facing related drug-crime charges in California, had a year to have had the substance tested if he was "so inclined," but "there [was] no evidence" that he did so. Defense counsel did not object at this point.

-5-

Shortly afterward, the government's attorney referred to a letter that Mr. Burns wrote to Ms. Tally after his arrest. Mr. Burns said in the letter that the police were interested in the bottle jack and asked that Ms. Tally save it for him because it might be an important piece of evidence, but Ms. Tally gave it to the police. The government asked the jury whether it really thought that Mr. Burns "would have taken the jack and said [to the police], 'Here's my tire jack. This is going to prove my innocence'?" Mr. Burns's counsel asked for a mistrial, contending that the government had twice shifted the burden to the defendant by referring to his failure "to produce evidence to prove his innocence." The court admonished the government to be "careful" about what it said "in regard to what the defendant should do" and denied a mistrial. The court then asked Mr. Burns's attorney whether he wanted any other relief such as an instruction to the jury, but counsel declined.

On appeal, Mr. Burns relies on cases that forbid the government from commenting to the jury upon the defendant's failure to testify. *See, e.g., Griffin v. California*, 380 U.S. 609, 615 (1965); *United States v. Triplett*, 195 F.3d 990, 995 (8th Cir. 1999), *cert. denied*, 529 U.S. 1094 (2000). He maintains that "the jury may have drawn the next logical inference" from the government's argument and wondered "why [Mr. Burns] did ... not simply take the stand and explain that and tell them when the conspiracy began?" We agree with Mr. Burns that the prosecution "may not improperly suggest that the defendant has the burden to produce evidence." *United States v. Balter*, 91 F.3d 427, 441 (3d Cir. 1996), *cert. denied*, 519 U.S. 1011 (1996); *see also United States v. Drake*, 885 F.2d 323, 323 (6th Cir. 1989), *cert. denied*, 493 U.S. 1033 & 1049 (1990). When the defendant's attorney offers a theory of defense, however, the government may respond by noting the absence of evidence to support that defense. *Balter*, 91 F.3d at 441.

We do not believe that the government was suggesting that the defendant had any burden to present evidence of his innocence of the offense charged here. Even if we assume that the government should not have made the two comments, before granting Mr. Burns any relief we would have to view the comments in the context of

the entire trial and consider their probable effect "on the jury's ability to judge the evidence fairly." *See United States v. Young*, 470 U.S. 1, 12 (1985). From the start of trial, the jury instructions explained that Mr. Burns was presumed innocent until proven guilty beyond a reasonable doubt, and that he did not have to present evidence, testify, or call other witnesses. We note, moreover, that the instructions notified the jury that the argument of counsel was not evidence. The government's two remarks were made in response to particular situations: Mr. Burns's counsel lamenting the destruction of evidence, and Mr. Burns asking in his letter to have a piece of evidence saved. Once an objection was raised, the court cautioned the government's attorney, and the government said nothing else that elicited an objection from Mr. Burns's lawyer. In his argument, Mr. Burns's attorney emphasized that the government had to prove every element of the crime beyond a reasonable doubt before the jury could return a guilty verdict. We conclude that even if the government's comments were improper, Mr. Burns has not shown that they deprived him of a fair trial, *see Conroy*, 424 F.3d at 840.

## III.

Mr. Burns contends that the conspiracy did not begin until 2000, and that therefore the district court should have excluded from evidence items seized from his residence by Missouri law enforcement officers in April 1998, as well as a certified copy of his related state conviction for possession of methamphetamine. We disagree.

To prove the conspiracy charge, the government was required to show that an agreement to engage in distributing methamphetamine existed between Mr. Burns and at least one other person. *United States v. Rodgers*, 18 F.3d 1425, 1428-29 (8th Cir. 1994). Individuals become members of a conspiracy when they knowingly contribute their efforts to the conspiracy's objectives, *see United States v. Galvan*, 961 F.2d 738, 741 (8th Cir. 1992), and they may be co-conspirators without knowing all of the members or all of the details of the conspiracy, *see United States v. Adipietro*, 983 F.2d 1468, 1475 (8th Cir. 1993). We note, moreover, that one conspiracy can continue to exist even if the participants or their roles change. *See id.* Keeping these

principles in mind, we believe that the evidence challenged by Mr. Burns combined with other evidence admitted at trial to support the existence of the charged conspiracy which, according to the indictment, began at least as early as April 1998 and continued until Mr. Burns was arrested in 2002.

The government offered evidence that during a search of Mr. Burns's combined business and residence in April 1998 officers seized the following items: 1.3 grams of methamphetamine, a hollowed-out Bible, an empty package with a note from Manuel Baez, address books containing Mr. Ellerman's name and Mr. Baez's name with a California phone number, numerous baggies, scales, a police scanner, a surveillance system, and eight firearms. An officer who was at the scene also testified that Mr. Burns admitted that the substance found was methamphetamine that came from his friend in California. The government also entered into evidence Mr. Burns's state methamphetamine-possession conviction, which arose out of the search.

The testimony of Ms. Tally showed that a Manny or Manuel Baez from California, who was mentioned in the seized address book, was supplying Mr. Burns with large quantities of methamphetamine from the time that she met Mr. Burns in 2001. Mr. Ellerman, whose name was also in an address book, was identified at trial as an individual who agreed with Mr. Burns and Mr. Neustel to distribute methamphetamine obtained from California in the Branson, Missouri, area, and he was doing so at the time COMET conducted its investigation in 2002.

In addition, Mr. Neustel's testimony supported a finding that he began participating in Mr. Burns's ongoing methamphetamine distribution activities in 1998: Mr. Burns came to Mr. Neustel's radiator shop in early 1998 to pick up a bag of money and drugs that had come from A.G. Abbott, a drug dealer, who was in jail. Mr. Abbott, from whom Mr. Neustel had been purchasing methamphetamine for use and resale, had telephoned Mr. Neustel and asked him to retrieve the bag for Mr. Burns. After meeting Mr. Neustel, Mr. Burns suggested to him that he "tak[e] [Mr. Abbott's] spot," and soon Mr. Neustel began selling drugs "for and with" Mr. Burns. For "quite

a while," Mr. Neustel would purchase four grams of methamphetamine from Mr. Burns, sell three, and keep one. Mr. Neustel initially bought from Mr. Burns once a week; after a month that increased to "maybe twice a week." Mr. Burns left town in late 1999 for about six months; when he returned, he continued selling methamphetamine to Mr. Neustel, but the quantities increased. The government also offered evidence that in August 1999, Mr. Burns was arrested in California with about one pound of methamphetamine and a gun in his vehicle.

Mr. Burns contends that Mr. Neustel testified on cross-examination that the conspiracy began in 2000. Initially, we note that Mr. Neustel's understanding of when the conspiracy began would not resolve the issue. And although Mr. Neustel answered affirmatively when asked whether "this *big* conspiracy between [him] and Mr. Burns commenced" in 2000 (emphasis added), he testified that he began selling methamphetamine "for and with" Mr. Burns on a regular basis long before that. In fact, we believe that the essence of Mr. Neustel's testimony is that in 2000 he became a bigger "player" in the operation: The agreement between Mr. Neustel and Mr. Burns to distribute methamphetamine did not begin then; Mr. Burns just began providing Mr. Neustel with more drugs to sell. Mr. Neustel testified that in 2000 he began using a ledger for transactions with Mr. Burns because they were "dealing in a lot more weight and worth a lot more money" than they had been.

We believe that the government showed a sufficient connection between evidence of Mr. Burns's criminal conduct in 1998 and his later participation in methamphetamine distribution to support a finding of an ongoing conspiracy. We therefore reject Mr. Burns's challenge to the admission of evidence seized from his residence in 1998. In addition, as with the seized evidence, we conclude that the record of Mr. Burns's conviction for possessing methamphetamine in 1998 was admissible to prove that he was conspiring to distribute methamphetamine at that time.

IV.

In another, closely related argument, Mr. Burns contends that the district court should have given a jury instruction that he requested on the issue of multiple conspiracies. The instruction that he offered proposed the existence of two separate conspiracies: One between Mr. Burns, Mr. Neustel, and others to distribute lesser amounts of methamphetamine from April 1998 until December 1999, and another between the same individuals to distribute greater amounts from January 2000 until July 2002. *Cf. Ellerman*, 411 F.3d at 945. He was entitled to an instruction on this theory of defense if the instruction that he offered was supported by the evidence and correctly stated the law. *See id.* We generally review *de novo* whether the evidence is sufficient to support a multiple conspiracy instruction. *United States v. Hall*, 171 F.3d 1133, 1149 (8th Cir. 1999), *cert. denied*, 529 U.S. 1027 (2000).

Several considerations affect whether one or two conspiracies exist, including the nature of the activities, the location where the alleged events of the conspiracy occurred, the identity of the co-conspirators, and the time frame. *United States v. McCarthy*, 97 F.3d 1562, 1571 (8th Cir.1996), *cert. denied*, 519 U.S. 1139, 520 U.S. 1133 (1997). Here, the evidence showed an agreement to distribute methamphetamine involving the same individuals in the same locations (California and the Branson, Missouri, area) throughout the time period. None of the listed considerations supports Mr. Burns's contention that there were two conspiracies.

We note, moreover, that the government agreed to an instruction that required the jury to find that the conspiracy began "at least as early as April 1998" before returning a guilty verdict (although we need not resolve whether this finding was required by law). And, over the objection of the government, Mr. Burns's counsel was allowed to argue to the jury that Mr. Burns was entitled to an acquittal unless the jurors believed beyond a reasonable doubt that the conspiracy began no later than April 1998. The jury then found Mr. Burns guilty. Having carefully reviewed the record, we believe neither that Mr. Burns was entitled to a multiple-conspiracy instruction, nor that the district court's refusal to give one prejudiced him.

V.

Mr. Burns contends that the district court should have excluded from evidence multiple firearms that were seized from his residence in 1998, because they were not relevant or probative of the issue of a drug conspiracy regardless of when that conspiracy might have commenced. We conclude that this argument is wholly without merit. Drugs and items related to drug distribution were found in Mr. Burns's residence along with the guns. Firearms, which are often used "to safeguard and facilitate drug transactions," are probative of an ongoing drug conspiracy, particularly where, as here, they are found in close proximity to methamphetamine and other tools of the drug trade. *See United States v. Harris*, 310 F.3d 1105, (8th Cir. 2002), *cert. denied*, 538 U.S. 1052 (2003).

VI.

For his final challenge to his conviction, Mr. Burns argues that even if the alleged errors that we have already discussed were harmless individually, their cumulative effect deprived him of a fair trial. But because we have not found multiple errors, harmless or otherwise, we must also reject this contention.

VII.

After this appeal was submitted to the court, Mr. Burns, relying on an administrative order of our court, moved to file a supplemental brief addressing the constitutionality of his sentence "at an appropriate time." In the order relied upon by Mr. Burns, we cited *Blakely v. Washington*, 124 S. Ct. 2531 (2004), announced that we generally would hold the mandates in criminal cases pending the Supreme Court's decision in *United States v. Booker*, 125 S. Ct. 738 (2005), and ruled that individual panels of judges "may permit" supplemental briefing after the Supreme Court decided *Booker*. In both *Blakely* and *Booker*, the defendants contended that their sentences violated the sixth amendment because the sentencing court had increased their punishment based on facts that had not been found by a jury beyond a reasonable doubt. In his motion to file a supplemental brief, Mr. Burns quoted the objections that he had filed in the district court before sentencing: He argued in these objections that

his "excessive" sentencing range under the United States Sentencing Guidelines violated the eighth amendment and the due process clause of the Constitution. We have concluded that we do not need supplemental briefing to address Mr. Burns's sentencing issues, and we therefore deny his motion.

The merits of Mr. Burns's eighth amendment and due process objections are not before us because he did not challenge his sentence on those grounds (or any other) in his opening or reply brief. *See United States v. Simmons*, 964 F.2d 763, 777 (8th Cir. 1992), *cert. denied*, 506 U.S. 1011 (1992). But we may consider whether Mr. Burns is entitled to any relief under *Booker* since that decision is applicable to all cases pending on direct appeal. *See Booker*, 125 S. Ct. at 769. In *Booker*, the Supreme Court held that "certain applications of the mandatory federal sentencing guidelines violated the Sixth Amendment, and adopted a remedy that rendered the guidelines essentially advisory." *United States v. Chauncey*, 420 F.3d 864, 877 (8th Cir. 2005).

Mr. Burns did not raise a sixth amendment issue in the district court, and thus we review for plain error only. *See United States v. Pirani*, 406 F.3d 543, 549-50 (8th Cir.2005) (en banc); *see also United States v. Backer*, 419 F.3d 882, 884 (8th Cir. 2005). In order to establish plain error, Mr. Burns must establish, *inter alia*, that there was a reasonable probability that the district court would have given him a more favorable sentence if it had not understandably erred by believing that it was bound by the guidelines. *See Pirani*, 406 S. Ct. at 552.

Although the court sentenced Mr. Burns to 360 months in prison, the low end of the guideline range (360 months to life imprisonment), this fact alone is insufficient for plain error relief. *See id.* at 553. At sentencing, Mr. Burns's attorney requested that (if his constitutional arguments were rejected) the district court sentence his client to the low end of the guideline range. In response, the court stated that although it was "rare" that a defendant who went to trial got the "low end" of the guidelines, it noted that Mr. Burns's two-point enhancement for possession of a weapon added 36 months

under the guidelines, "creat[ing] even a more harsh sentence for this defendant." The court concluded that "360 months is ... certainly a sufficient sentence for the conviction here."

We believe that the district court, by referring to the 30-year sentence as "even ... more harsh" and "certainly sufficient," raised an inference that a lower sentence for Mr. Burns would have sufficed. As we have observed, "[a] reasonable probability does not mean certainty. In fact, it does not even equate to proof by a preponderance of the evidence." *United States v. Jimenez-Gutierrez*, 425 F.3d 1123, 1126 (8th Cir. 2005). But it must be a probability "sufficient to undermine confidence in the outcome." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004). After reviewing "the appellate record as a whole," as we must, *Pirani*, 406 F.3d at 552, we conclude that there is a reasonable probability that the district judge would have given Mr. Burns a more favorable sentence had he not believed that the guidelines were mandatory. We also think that Mr. Burns meets the final requirement for plain error relief, since to keep him in prison for a longer period because of the court's error would seriously affect the fairness, integrity, or public reputation of judicial proceedings. *See United States v. Fleck*, 413 F.3d 883, 897 (8th Cir. 2005).

## VIII.

Accordingly, we affirm Mr. Burns's conviction, and we remand to the district court for resentencing in light of the principles set forth in *Booker*.

_____