# United States Court of Appeals
### For the Eighth Circuit

_____

No. 14-3136

_____

United States of America

*Plaintiff - Appellee*

v.

George Thunderhawk

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of North Dakota - Bismarck

_____

Submitted: June 12, 2015
Filed: August 27, 2015

_____

Before LOKEN, BYE, and KELLY, Circuit Judges.

_____

LOKEN, Circuit Judge.

A jury convicted George Thunderhawk of abusive sexual contact of a child under 12 years of age in violation of 18 U.S.C. § 2244(a)(5). The district court[1] sentenced him to 41 months in prison. Thunderhawk appeals, arguing the court erred

_____

[1]The Honorable Daniel L. Hovland, United States District Judge for the District of North Dakota.

in not suppressing his allegedly involuntary confessions, in instructing the jurors to draw reasonable inferences from their experience and common sense, in denying two motions for mistrial based on improper closing arguments, and in committing three sentencing errors. We affirm.

## I. Suppression Issues

In 2013, FBI Special Agent Ryan O'Neil interviewed V.R.B., the reported victim of child abuse. V.R.B. told him that one night in 2008, when she was eight or nine years old and living with her mother, she awakened when someone lay down in bed behind her, reached around, and touched her vaginal area through her clothes for one to two minutes. V.R.B. pretended to remain asleep, but got up after the person left and saw Thunderhawk, who was socially involved with her mother, sitting on the couch in her living room. After this interview, O'Neil and BIA Special Agent Lawrence knocked on the door of Thunderhawk's home in Cannonball, North Dakota, and asked if they could speak with him regarding an allegation. Thunderhawk agreed to talk, and the agents waited in their car. Ten minutes later, Thunderhawk came out and entered the front passenger seat of O'Neil's vehicle.

The agents informed Thunderhawk they wanted to ask him a few questions, he could end the interview and leave at any time, he was not under arrest, and he would not be arrested at the end of the interview regardless of what he told them. The agents interviewed Thunderhawk for approximately twenty minutes. He initially denied the allegations, suggesting someone else may have assaulted V.R.B. O'Neil said he thought Thunderhawk was lying. Thunderhawk eventually admitted getting into bed with the victim, telling O'Neil he had been drinking heavily at that point in his life. O'Neil asked if he could turn on his recorder and summarize the interview. Thunderhawk agreed. In a five-minute taped statement, O'Neil reviewed the interview and gave Thunderhawk an opportunity to correct any mistakes. O'Neil then

-2-

asked Thunderhawk if he would be willing to do a polygraph test at some point in the future. Thunderhawk agreed and then exited the vehicle and returned to his home.

A month later, O'Neil called Thunderhawk to ask if he was available for a polygraph test the next day. Thunderhawk agreed but needed a ride to the police department, so O'Neil offered to pick him up for the interview. Thunderhawk rode in the front passenger seat of O'Neil's vehicle to the police department. O'Neil told Thunderhawk taking the test was voluntary, he could stop at any time, and O'Neil would give him a ride home at the end of the day no matter what he said. At the police department, Thunderhawk signed written Miranda warnings and was advised that the polygraph was voluntary and he could stop at any time. O'Neil interviewed Thunderhawk after the one or two hour polygraph. During the recorded interview, Thunderhawk admitted getting into bed with V.R.B. and touching her vaginal area over her clothes for thirty to sixty seconds. O'Neil then drove Thunderhawk home.

In the district court, Thunderhawk filed a motion to suppress, arguing he was in custody during the first interview and made involuntary inculpatory statements without the required Miranda warnings. The district court denied the motion, concluding that the first interview was not custodial and thus Miranda warnings were not required, a ruling Thunderhawk does not appeal, and that the inculpatory statements were not involuntary, a ruling he does appeal.

On appeal, Thunderhawk argues that his incriminating statements during the first interview must be suppressed because they were constitutionally involuntary.[2] "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth

---

[2]Thunderhawk does not argue the second interview was impermissibly coercive nor explain why his more detailed confession at the second interview must be suppressed if his statements at the first interview a month earlier were involuntary. As we conclude the first statements were voluntary, we need not consider this issue.

Amendment." Colorado v. Connelly, 479 U.S. 157, 167 (1986); see United States v. Bordeaux, 400 F.3d 548, 560-61 (8th Cir. 2005). Thunderhawk concedes "there were no physical or psychological ploys used against Thunderhawk to get him to talk." However, he argues, Agent O'Neil's misleading assurance that Thunderhawk would not be arrested rendered his statements involuntary because the assurance was made "to coerce Thunderhawk into making a statement." We disagree. It is significant that O'Neil truthfully told Thunderhawk he would not be arrested *at the end of the interview* regardless of what he said, not that he would never be arrested or prosecuted. More importantly, a promise made by law enforcement not to arrest or prosecute does not render a confession involuntary; "our polestar always must be to determine whether or not the authorities overbore the defendant's will and critically impaired his capacity for self-determination." United States v. LeBrun, 363 F.3d 715, 725 (8th Cir. 2004) (en banc), cert. denied, 543 U.S. 1145 (2005). Here, there was no coercive police activity that overbore Thunderhawk's will. Rather, he voluntarily made incriminating statements after twenty or twenty-five minutes of non-coercive questioning. See id. at 726 (placing "substantial weight" on the fact that defendant confessed after thirty-three minutes).

Thunderhawk further argues that it was misleading and coercive for Agent O'Neil to wait until the end of the first interview to turn on the tape recorder, relying on the Supreme Court's decision in Missouri v. Seibert, 542 U.S. 600 (2004), and on O'Neil's testimony that turning on a recorder at the outset of an interview can have a chilling effect. Justice Kennedy, whose separate opinion provided the fifth vote in Seibert, explained that the interrogation technique used in that case was unconstitutional because it was "designed to circumvent *Miranda v. Arizona*, 384 U.S. 436 (1966)," by intentionally deferring Miranda warnings until the suspect in custody confessed. 542 U.S. at 618, 620-21 (Kennedy, J., concurring in the judgment). Here, the district court concluded that Thunderhawk was not in custody, so Miranda warnings were not required. Thus, Seibert has no bearing on this case. See United States v. Thomas, 664 F.3d 217, 222-23 (8th Cir. 2011). Thunderhawk

agreed to Agent O'Neil's non-coercive request to record a summary of his voluntary statements during the first interview. We affirm the denial of the motion to suppress.

## II. A Jury Instruction Issue

At trial, Agent O'Neil testified to the two interviews with Thunderhawk, and the interview recordings were played for the jury. V.R.B. also testified regarding the assault. Thunderhawk's defense was that he had been drinking and did not know what he was doing to V.R.B. until he came to, realized what he was doing was wrong, and stopped. O'Neil testified that the level of detail Thunderhawk provided about the incident suggested he was able to understand what happened that night.

Quoting the indictment, the district court instructed the jury that the government must prove, beyond a reasonable doubt, that Thunderhawk "knowingly engaged in sexual contact with V.R.B. . . . with an intent to abuse, arouse, and gratify the sexual desire of any person." Overruling Thunderhawk's timely objection, the court also gave an "Inferences" instruction:

> You are to consider only the evidence in the case. In your consideration of the evidence, you are not limited to the statements of the witnesses. In other words, you are not limited solely to what you see and hear as the witnesses testify. You are permitted to draw, from facts which you find have been proven, such reasonable inferences as you feel are justified in light of experience and common sense.

On appeal, Thunderhawk argues the district court erred in giving this instruction because it came "too close" to creating a mandatory presumption that relieved the government of its burden to prove that he touched V.R.B. with the requisite criminal intent. See generally Francis v. Franklin, 471 U.S. 307, 313-15 (1985). This contention is without merit. "Juries have long been instructed, in state and federal courts," that, in basing their verdicts only on the evidence, they are permitted to draw

"such reasonable inferences as you feel are justified in the light of your experience and common sense." Grotemeyer v. Hickman, 393 F.3d 871, 879 (9th Cir. 2004) (quotation omitted), cert. denied, 546 U.S. 880 (2005). In Karras v. Leapley, 974 F.2d 71, 72-73 (8th Cir. 1992), we held that an instruction stating that "an inference arises" did not create an unconstitutional mandatory presumption. Here, the boilerplate instruction did not identify a specific inference the jury was permitted to draw. It created no impermissible presumption.

### III. Closing Argument Issues

Thunderhawk argues that the district court erred in not granting a mistrial when the government made two objectionable statements during closing argument. A mistrial may result during closing arguments if (1) the prosecutor's remarks were improper, and (2) the remarks prejudicially affected the defendant's substantial rights by depriving him of a fair trial. United States v. Eagle, 515 F.3d 794, 804 (8th Cir. 2008). We review the district court's denial of a mistrial for abuse of discretion. United States v. Burns, 432 F.3d 856, 860 (8th Cir. 2005).

**A.** Thunderhawk argues the district court erred in denying his request for a mistrial when government counsel improperly argued that the jury could convict Thunderhawk if it found that he engaged in sexual contact with V.R.B. with the intent to abuse, arouse, *or* gratify the sexual desire of any person. We reject this contention because the argument was not improper. The governing statute expressly states this element of the offense in the disjunctive. See 18 U.S.C. § 2246(3). Although the court's instruction defining this element, like the indictment, stated the alternatives in the conjunctive -- "an intent to abuse, arouse, *and* gratify" sexual desire -- it is well established that, when the statute is phrased in the disjunctive, "an indictment charge[s] in the conjunctive to inform the accused fully of the charges," but "proof of any one of the violations charged conjunctively in the indictment will sustain a conviction." United States v. Urkevich, 408 F.3d 1031, 1036 (8th Cir. 2005)

-6-

(quotations omitted); see <u>Griffin v. United States</u>, 502 U.S. 46, 56-57 (1991), and cases cited.

In these circumstances, Thunderhawk's contention that the government's closing argument ignored law of the case established by the court's instruction is without merit. Where the evidence is sufficient to prove all statutory elements of the offense beyond a reasonable doubt, as in this case, a jury instruction erroneously requiring additional proof is not a basis for overturning the conviction. <u>See</u> <u>United States v. Inman</u>, 558 F.3d 742, 749-50 (8th Cir.), <u>cert. denied</u>, 558 U.S. 916 (2009).

**B.** Thunderhawk further argues the district court erred in denying a mistrial when government counsel improperly shifted the burden of proof to the defense by stating, "the Defendant had no real case to present to you from the defense perspective. He made admissions, a confession not once, but twice." We agree the government may not properly suggest the defendant has the burden to produce evidence. "When the defendant's attorney offers a theory of defense, however, the government may respond by noting the absence of evidence to support that defense." <u>Burns</u>, 432 F.3d at 861 (citation omitted). Here, the government commented on the strength of Thunderhawk's intoxication defense; it did not improperly argue Thunderhawk had the burden to present evidence of his innocence. The district court instructed the jury that the government had the burden to prove all elements of the offense beyond a reasonable doubt, that the defendant was not required to present a defense, and that counsel's argument was not evidence. The court did not abuse its discretion in denying Thunderhawk's request for a mistrial. <u>See</u> <u>id.</u> at 861-62.

## IV.  Sentencing Issues

**A. Acceptance of Responsibility.** The district court adopted the Presentence Investigation Report's recommendation that Thunderhawk be denied a reduction for acceptance of responsibility under U.S.S.G. § 3E1.1 because he put the government

to its burden of proof at trial. At the sentencing hearing and on appeal, Thunderhawk argues he deserved the reduction because he admitted the act and only went to trial on the legal question of whether he could formulate the requisite criminal *mens rea*, given his level of intoxication. The court denied the reduction. Noting that most defendants in criminal sexual offense cases argue that alcohol or drugs played a role in the offense, the court found that this was not the "rare case" where a defendant who takes a case to trial should still get a reduction for acceptance of responsibility. See U.S.S.G. § 3E1.1, comment. (n.2). We review the court's interpretation and application of the Guidelines de novo and its factual findings for clear error. United States v. Herron, 539 F.3d 881, 887 (8th Cir. 2008).

On appeal, Thunderhawk argues that we should treat an intoxication defense like an insanity defense, which *may* "in the sound discretion of the sentencing court" warrant an acceptance of responsibility reduction. See United States v. Barris, 46 F.3d 33, 35 (8th Cir. 1995). In United States v. Big Crow, 898 F.2d 1326, 1330 (8th Cir. 1990), we affirmed grant of the reduction based on the defendant's showing that excessive drinking caused his admitted criminal behavior. However, in Herron, 539 F.3d at 887, we affirmed denial of the reduction when, as in this case, defendant "not only put the government to its proof at trial, but also continued to deny that he had the ability to form the requisite intent due to his voluntary intoxication." Here, although Thunderhawk confessed to sexual contact with V.R.B., he did not stipulate to his conduct at trial, thereby requiring the government to call both O'Neil and the victim to testify to the events in question. He was not the rare defendant who "goes to trial to assert and preserve issues that do not relate to factual guilt." United States v. Rivera, 370 F.3d 730, 735 (8th Cir. 2004). The district court did not abuse its discretion or clearly err in denying the acceptance of responsibility reduction.

**B. Restitution.** Adopting the PSR's recommendation, the district court imposed restitution in the amount of $14,967.47 for the cost of V.R.B.'s health care, rejecting Thunderhawk's contention that restitution is a criminal punishment that

increases the statutory maximum sentence and must therefore be found by a jury and proven beyond a reasonable doubt. On appeal, Thunderhawk again argues that restitution is criminal punishment beyond the statutory maximum and therefore must be proved to a jury under Apprendi v. New Jersey, 530 U.S. 466 (2000), and its progeny. His briefs fail to acknowledge that our court has repeatedly held to the contrary. See United States v. Thomas, 422 F.3d 665, 670 (8th Cir. 2005), citing United States v. Carruth, 418 F.3d 900, 904 (8th Cir. 2005), where we concluded that Apprendi does not prohibit judicial restitution fact finding because "it is essentially a civil remedy created by Congress and incorporated into criminal proceedings for reasons of economy and practicality."

Thunderhawk argues that, for Sixth Amendment purposes, restitution is similar to criminal fines, which the Supreme Court held are criminal punishment subject to the rule of Apprendi in Southern Union Co. v. United States, 132 S. Ct. 2344, 2357 (2012). We conclude the analogy is unsound and find nothing in the Southern Union opinion leading us to conclude that our controlling precedent in Carruth and Thomas was implicitly overruled. Accord United States v. Kieffer, 596 F. App'x 653, 663-64 (10th Cir. 2014), cert. denied, 125 S. Ct. 2825 (2015).

**C. Substantive Reasonableness.** The district court sentenced Thunderhawk to 41 months in prison, the bottom of his advisory guidelines sentencing range, rejecting his request for a downward variance. On appeal, Thunderhawk argues the district court abused its discretion and imposed a substantively unreasonable sentence when it denied a downward variance. We review the substantive reasonableness of a sentence for abuse of discretion. United States v. Thibeaux, 784 F.3d 1221, 1227 (8th Cir. 2015). Here, in determining that Thunderhawk warranted a sentence at the bottom of the advisory guidelines range, the district court considered the 18 U.S.C. § 3553(a) sentencing factors, Thunderhawk's letters of support from the community, his minimal criminal history, and victim impact statements. The court has wide

latitude to weigh these factors.  <u>See</u> <u>id.</u>  There was no abuse of its substantial discretion in imposing a sentence within the guidelines range.

The judgment of the district court is affirmed.

_____