UNITED STATES of America, Appellee,

v.

Donnie BLANKINSHIP, Appellant.

No. 85–1894.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 6, 1985.

Decided Feb. 18, 1986.

ed with the case.

David R. Freeman, Federal Public Defender, St. Louis, Mo., for appellant.

Pam Bucy, Asst. U.S. Atty., St. Louis, Mo., for appellee.

1. The Honorable Clyde S. Cahill, United States District Judge for the Eastern District of Missouri.

Before ARNOLD, Circuit Judge, HENLEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Donnie Blankinship appeals from his conviction of assault on a postal employee in violation of 18 U.S.C. § 111 (1982). The only issue Blankinship raises on appeal is whether the district court[1] erred in admitting an extrajudicial written statement of the assaulted postal employee corroborating his in-court testimony. After reviewing the record, we conclude that portions of the employee's prior statement were used by Blankinship's counsel to show that the postal employee's in-court testimony was the result of recent fabrication, or improper influence or motive. The statement was thus admissible under Federal Rule of Evidence 801(d)(1)(B). We therefore affirm the conviction.

Freeman Stowers, a postal carrier, was confronted by the defendant and two other individuals while delivering mail. The individuals demanded to know whether Stowers was carrying any government checks. Stowers replied that he was not. One picked up a brick and threatened Stowers, but was restrained by his companion. At that point Stowers apparently stated that "[W]e can talk about this later." This remark was apparently interpreted by the defendant and his companions as a hostile threat, although Stowers testified that he did not intend it as such. As Stowers tried to continue on his route, the individual brandishing the brick lunged at Stowers. Stowers testified that as he grappled with this individual, Blankinship entered the fray. According to Stowers, Blankinship elbowed him in the back, sprayed him in the face with his own dog spray, and hit and kicked him repeatedly.

At trial, Blankinship's counsel cross-examined Stowers about a written statement Stowers had given to postal inspectors af-

ter the incident. During cross-examination the following exchanges took place:

Q. And isn't it true, sir, that you told * * * [the postal inspectors] that you handed the mail to the subjects that were sitting on the porch?
A. No.
Q. You deny that?
A. I deny it.

(Tr. 39)

\* \* \* \* \* \*

Q. I'll ask you then this question, sir, whether or not you didn't, in fact, say to the postal inspectors, that Willie asked you what you meant by talking about it later, and you said that he, meaning yourself, would be back later. Now isn't that what you said, that you meant you would be back later.
A. No.
Q. Did you say that to the postal inspectors or not, sir?
A. I did not say that to the postal inspectors.

(Tr. 39).

\* \* \* \* \* \*

Q. At any time did you get anybody in a clinch?
A. I don't understand what you mean.
Q. Well, I hand you these two pieces of paper there, Mr. Stowers, and ask you to look at them. And I'll ask you, in particular, Mr. Stowers, to look at the sentence, three lines above the bottom. Now, first of all, have you had a chance to look at it, now, sir?
A. Yes I have.
Q. All right. And that is a written statement in your own handwriting, isn't it?
A. Yes, it is.
Q. That's a statement that you gave to postal authorities after this occurrence?
A. Yes I did.
Q. And is it true, sir, that at the bottom of the first page of that statement, you refer to being in a—having a clinch or being in a clinch with Marvin?
A. Yes.

Q. And what did you mean to convey by the word clinch?
A. I said like when he lunged at me, I grabbed back at him.
Q. Well, as a matter of fact, isn't it true, sir, that you had him around the head and you had his head in a clinch?
A. No, I didn't.

(Tr. 51–52).

On recross-examination the following interrogation occurred with reference to the statement:

Q. My question to you, sir, is whether or not you told the postal inspectors that talked to you, at any time, whether it was that day or later, the following: Carrier Stowers stated, "Willie asked him what he meant by talking about it later. That he, Stowers, would be back later." Now, did you tell that to the agents or not?
A. No, sir.
Q. You didn't say that to the agents?
A. No, sir.
Q. And if the agents reported that, that would be untrue?
A. Yes, sir.

(Tr. 71).

Thereafter the government offered into evidence Stower's entire written statement. The district court admitted the statement over Blankinship's objection.

■ Blankinship correctly argues that a witness' extrajudicial declarations consistent with his trial testimony are normally inadmissible for the purpose of rehabilitating the witness. *Hanger v. United States*, 398 F.2d 91, 103 (8th Cir.1968); *cf. United States v. Dennis*, 625 F.2d 782, 797 (8th Cir.1980) (prior consistent statements admissible to the extent that they relate to the same subject matter as prior inconsistent statements used for the purpose of impeachment).

Federal Rule of Evidence 801(d)(1)(B) provides that an extrajudicial statement is not hearsay if "[t]he declarant testifies at trial and is subject to cross-examination concerning the statement, and the statement is * * * consistent with his testimony

and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive * *." We think it apparent from the testimony set forth above that the defendant made a concerted effort to demonstrate that Stowers' trial testimony was inconsistent with his earlier statement to postal authorities and thus the product of recent fabrication or improper influence or motive. *See United States v. Herring,* 582 F.2d 535, 541 (10th Cir.1978). The government therefore was entitled to introduce the statement to rehabilitate the witness. *See United States v. Nelson,* 735 F.2d 1070, 1072 (8th Cir.1984); *United States v. Lanier,* 578 F.2d 1246, 1256 (8th Cir.), *cert. denied,* 439 U.S. 586, 99 S.Ct. 169, 58 L.Ed.2d 163 (1978).

■ Nor did the district court err in admitting the entire statement. Where portions of a witness' prior statement are used to impeach him, other portions of the statement are admissible if they relate to the subject matter about which he was cross-examined, and "meet the force of the impeachment." *Coltrane v. United States,* 418 F.2d 1131, 1140 (D.C.Cir.1969). The admission of Stowers' entire statement was necessary to show the seriousness of the claimed inconsistencies. *Id.* at 1140; *cf. Dennis,* 625 F.2d at 797 (admission of entire extrajudicial statement not proper where all prior consistent statements related to impeachment already presented to jury, and statements were mere repetition).

■ Admission or rejection of a prior extrajudicial statement is addressed to the sound discretion of the trial court and will not be reversed on appeal except when there has been a prejudicial abuse of discretion. *Nelson,* 735 F.2d at 1072; *Dennis,* 625 F.2d at 797; *Affronti v. United States,* 145 F.2d 3, 8 (8th Cir.1944). The district court did not abuse its discretion in admitting this statement when serious efforts had been made to show recent fabrication or improper motive. We affirm the judgment of conviction.