# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1390

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Eric Conroy, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: September 13, 2005
Filed: September 29, 2005

_____

Before RILEY, FAGG, and GRUENDER, Circuit Judges.

_____

RILEY, Circuit Judge.

Eric Conroy (Conroy) was convicted of aggravated sexual abuse in violation of 18 U.S.C. §§ 2241(a)(1), 2246(2)(A), and 1153, and abusive sexual conduct in violation of 18 U.S.C. §§ 2244(a)(1), 2246(3), and 1153. Conroy challenges his convictions, arguing the district court[1] erred in (1) finding statements made by Conroy to one of his victims, Raelene Tail (Tail), not subject to disclosure under Brady v. Maryland, 373 U.S. 83 (1963); (2) not excluding or limiting the government's expert witness testimony following the government's alleged improper

_____

[1]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota.

expert witness notice; (3) admitting the expert witness's testimony; (4) admitting Tail's prior consistent statements; and (5) denying his motion for mistrial based on prosecutorial misconduct. We affirm.

## I.   BACKGROUND

Conroy was indicted on five counts of sexually abusing three victims: Tail, Sheila Slow Bear (Slow Bear), and Angela Sun Bear. The events giving rise to this appeal took place on the Pine Ridge Indian Reservation, where Conroy's father is a tribal police officer.

Following Conroy's arrest, Tail provided a detailed written statement to police. Tail's disclosed statements included an explanation for her late reporting of the assaults, saying she did not immediately report the rapes because Conroy's father is a tribal police officer. At a pretrial conference, the government asserted Tail would testify at trial she did not immediately report her first rape by Conroy because Conroy had told her the police had let him go in the past because of his father's position. Conroy objected and, pursuant to Brady, requested disclosure of the statement he allegedly made to Tail. The district court held the statement was not exculpatory and thus not subject to disclosure.

At trial, Tail testified Conroy had bragged to Tail that he and others once were stopped by police, but when he told police who his father was, the police set him free while detaining the others. On cross-examination, Conroy attempted to impeach Tail with her written statement to police regarding several specific factual details. On redirect, the government was permitted, over Conroy's objection, to rehabilitate Tail with prior consistent statements she made in her written statement that did not specifically pertain to the topics on which she was impeached.

Also before trial, the government filed a notice to use expert witness Kandi Smith (Smith) to testify as to laboratory results of a rug found outside Tail's home on

which Conroy allegedly wiped semen from his penis following one of the rapes of Tail, including Smith's opinions on why the laboratory results found no semen on the rug. Conroy filed motions in limine arguing (1) the notice failed to provide adequate notice of the substance of Smith's opinions, and (2) the scope of Smith's testimony exceeded the scope of the laboratory results. The district court denied the motions. Smith testified at trial as to why the laboratory results may not have found Conroy's semen on the rug. Conroy objected to the testimony as too speculative and not based on facts or data, but the district court denied the objection and admitted the testimony.

During closing argument, the government told the jury Conroy failed to produce medical evidence supporting his arguments the victims would have been bruised by Conroy's actions, Conroy had the ability to subpoena witnesses, and Conroy presented no evidence regarding how easily the victims bruised. After each statement, the district court sustained Conroy's objection. Following closing arguments, the district court addressed these specific objections and admonished the jury as to the government's burden of proving its case beyond a reasonable doubt, and explained "the defendant does not have the burden or duty of calling any witnesses or producing any evidence."

Conroy was convicted on three of five counts. He moved for a mistrial based on the prosecutor's closing argument, but the district court held the statements, while improper, were not prejudicial. Conroy was sentenced to 188 months' imprisonment.

## II.    DISCUSSION
### A.    Failure to Disclose Conroy's Statements to Tail Pursuant to <u>Brady</u>
We review for an abuse of discretion the government's alleged violation of its disclosure obligations under <u>Brady</u>. <u>United States v. Deavault</u>, 190 F.3d 926, 929 (8th Cir. 1999).

Brady requires the government to disclose "evidence favorable to an accused upon request . . . where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87. Impeachment evidence as well as exculpatory evidence falls within the Brady rule. United States v. Bagley, 473 U.S. 667, 676 (1985). Impeachment evidence is "evidence favorable to an accused, so that, if disclosed and used effectively, it may make the difference between conviction and acquittal." Id. (citations and quotations omitted). Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." Id. at 682.

Conroy argues the government violated its duties under Brady by failing to disclose Conroy's statement to Tail about receiving favorable treatment by police following a traffic stop. He claims this was impeachment evidence because, had he known about it, he could have used facts surrounding the alleged stop to impeach Tail's credibility. The government implies the evidence was not impeachment evidence, and argues it was not material.

We disagree with the government as to impeachment, but agree the evidence was not material. While a statement by a witness supporting her own testimony does not fit what one normally thinks as impeachment evidence (such as bias or interest), under the broad definition in Bagley, Tail's testimony probably fits within an expanded impeachment definition because, if used effectively, it may have been useful in attacking Tail's credibility. On the other hand, even if the statement was impeachment evidence, it was not material. The issue at trial was not whether the traffic stop occurred as Tail testified, but what Tail believed regarding Conroy's special treatment by the police. Tail's belief or fear about Conroy and the police, i.e., her state of mind for not reporting the rapes, was material. The true facts surrounding the alleged stop were not material. Further, had the statement been disclosed, it might

have affected the trial's outcome only indirectly if (1) the traffic stop did not occur as Tail testified, (2) if Conroy somehow presented evidence contradicting Tail's account of the traffic stop, (3) if the jury believed Conroy's evidence regarding the stop over Tail's testimony, (4) if this inconsistency affected the jury's credibility determination of Tail on the sexual abuse charge, and (5) if the jury based a not guilty verdict on Tail's diminished credibility. These many "if's" do not create a reasonable probability of a different outcome.

### B.    Insufficient Expert Witness Notice

We review for an abuse of discretion alleged violations of Federal Rule of Criminal Procedure 16(a)(1)(G). See United States v. Tibesar, 894 F.2d 317, 319 (8th Cir. 1990).

Rule 16(a)(1)(G) requires the government to provide a summary of an expert witness's expected testimony, including "the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." The government's notice of Smith's expected testimony contained the following statement: "Ms. Smith is expected to testify that no semen was detected on the rug and the reasons why no semen or vaginal fluids were detected, including but not limited to environmental impacts, non-secreter issues, and the lack of established vaginal fluid testing availability."

Conroy argues the government's notice of intent to use Smith was insufficient because the notice failed to explain the bases for Smith's opinions as to why laboratory results did not find semen on the rug located outside Tail's home. The government responds claiming the notice was sufficient, and the level of detail argued by Conroy is not required by the law.

While the government's notice did not explain in detail the bases for Smith's opinions, and its use of a non-exclusive list is questionable, the district court's

holding that the notice was sufficient was not an abuse of discretion. First, Conroy cites no case law supporting his argument. Second, upon receiving the government's notice, Conroy had the opportunity for over five months before trial to move to compel a more detailed notice, but he chose not to do so. Conroy also could have sought the advice of his own expert. Third, a detailed notice would not have helped Conroy. His defense was he never committed the rapes; thus, no semen could have been found on the rug. Smith testified no semen was found on the rug, thereby supporting Conroy's defense. A more detailed notice, which arguably could have helped Conroy cross-examine Smith as to her opinion regarding the different scenarios for semen being on the rug and then disappearing, would have offered little help to his defense claim that no semen was ever on the rug.[2]

## C.    Inadmissible Expert Witness Opinion

Conroy argues the district court erred in admitting Smith's testimony because her testimony was too speculative in opining about the reasons for a lack of physical evidence. As an initial matter, the government argues plain error review applies because Conroy originally challenged the scientific basis of Smith's testimony under Daubert, but later withdrew that challenge. See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993). Conroy responds an abuse of discretion standard applies because he never actually raised a Daubert challenge and therefore never waived it, but he did object to the testimony's general admissibility under Federal Rule of Evidence 702 both before and during trial. Because Conroy challenged the admission of Smith's testimony under Rule 702, we review for an abuse of discretion. See Craftsmen Limousine, Inc. v. Ford Motor Co., 363 F.3d 761, 776 (8th Cir. 2004).

It is not an abuse of discretion to allow an expert witness to testify as to a lack of physical evidence as long as the expert's opinion does not usurp the jury's role of

_____

[2]The district court's advice to the government "in the future . . . [to] be more enlightening to the defendant" in Rule 16(a)(1)(G) expert disclosures is good advice.

assessing whether the event occasioning the evidence actually occurred. United States v. Kirkie, 261 F.3d 761, 766 (8th Cir. 2001). Such testimony assists the jury in understanding the evidence or lack of it. See Fed. R. Evid. 702. We see little difference between a forensic expert testifying as to the reasons for not finding bodily fluid evidence on a rug, and the common situation of a fingerprint expert testifying as to the reasons for not finding a defendant's fingerprints on an object in question. See, e.g., United States v. Solorio-Tafolla, 324 F.3d 964, 965 (8th Cir. 2003) (noting a law enforcement expert's testimony on the lack of fingerprint evidence on certain drug packaging). Further, an expert's testimony generally is admissible when it "substantially track[s] the summary report." United States v. Beltran-Arce, 415 F.3d 949, 953 (8th Cir. 2005). Smith's testimony did so, and her speculation as to the ways time and environmental factors might eliminate the presence of semen is allowed and may even be encouraged: "A certain amount of speculation is necessary, an even greater amount is permissible (and goes to the weight of the testimony), but too much is fatal to admission." Group Health Plan, Inc. v. Philip Morris USA, Inc., 344 F.3d 753, 760 (8th Cir. 2003) ("[T]he district court is the 'gatekeeper,' and we owe significant deference to its determination that expert testimony is excessively speculative."). We hold the district court did not abuse its discretion in admitting Smith's testimony.

### D.    Inadmissible Prior Consistent Statements of Tail

We review for an abuse of discretion a district court's decision to admit a prior extrajudicial statement under Federal Rule of Evidence 801(d)(1)(B). United States v. Blankinship, 784 F.2d 317, 320 (8th Cir. 1986).

Conroy argues the district court abused its discretion in admitting prior statements made by Tail to a police officer, because the prior consistent statements did not relate to the specific subject matter of the prior inconsistent statements Conroy had used to impeach Tail during cross-examination. Conroy attempted to impeach Tail as to her testimony about whether the porch light was on, the number

of adults at home, her missing clothes, and an encounter with Conroy at Slow Bear's home. Following cross-examination, the government attempted to rehabilitate Tail with prior consistent statements regarding her desire to end her relationship with Conroy.

We hold the district court did not abuse its discretion. While the statements admitted to rehabilitate Tail did not specifically relate to the subject matter of the statements impeached by Conroy, it is not an abuse of discretion for a district court to admit prior consistent statements "relevant to any other portion made the subject of cross-examination," Coltrane v. United States, 418 F.2d 1131, 1140 (D.C. Cir. 1969), cited in Blankinship, 784 F.2d at 320, when doing so is "necessary to show the seriousness of the claimed inconsistencies," as a result of "serious efforts ha[ving] been made to show recent fabrication or improper motive." Blankinship, 784 F.2d at 320. Rule 801(d)(1)(B) permits prior statements consistent with the witness's trial testimony "to rebut . . . [a] charge . . . of recent fabrication or improper influence or motive," and does not expressly limit the prior consistent statements' admissibility to the subject matter of the statements challenged on cross-examination. We generally leave decisions under Rule 801 to the "sound discretion of the trial court," and we do the same here. Blankinship, 784 F.2d at 320.

### E.    Prosecutorial Misconduct During Closing Argument

We review for an abuse of discretion a district court's ruling on a motion for mistrial based on prosecutorial misconduct. United States v. Hernandez, 779 F.2d 456, 458 (8th Cir. 1985). "The test for reversible prosecutorial misconduct has two parts: (1) the prosecutor's remarks or conduct must in fact have been improper, and (2) such remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial." Id.

Conroy argues the prosecutor's repeated attempts to shift the burden of proof to Conroy during closing arguments constituted reversible misconduct. The

-8-

government argues the comments were not improper, then contends even if they were, they were not prejudicial, given the district court's admonishment of the jury following closing arguments as to the government's burden of proof.

Even if the prosecutor's comments were improper, they were not prejudicial. The comments were brief, over a matter of seconds in the context of the four-day trial (three successive statements, with objections to each sustained); the government's case was strong (consisting of corroborating testimony of witnesses and three victims); and the comments promptly were cured by the district court's admonition. Cf. United States v. Johnson, 968 F.2d 768, 771 (8th Cir. 1992).

## III.   CONCLUSION

We affirm Conroy's convictions for aggravated sexual abuse and abusive sexual conduct.

_____