# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2713

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Parish Swift, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: March 9, 2010
Filed:  October 25, 2010

_____

Before SMITH, BENTON, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Parish Swift appeals his conviction, following a two-day jury trial, for being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Prior to trial, Swift moved to suppress statements he made while in custody, and during trial, he moved for a mistrial. The district court[1] denied both motions and, after the jury found Swift guilty, sentenced him to 60 months imprisonment. In this appeal, Swift challenges the denials of his motions. We affirm.

---

[1]The Honorable Joseph F. Bataillon, Chief Judge, United States District Court for the District of Nebraska.

On March 23, 2008, while responding to a "shots fired call," Omaha police Officers Chris Duffek and Craig Wylie observed a green Chevrolet Suburban matching the description of the suspect vehicle described in the call. As the officers turned their patrol car around, they saw the Suburban pull into the driveway of a nearby residence and observed six occupants exit the vehicle. The officers were able to detain four of the occupants, but two of the occupants refused officers' orders to stop and, instead, entered the residence. Approximately five minutes later, when the two occupants—Parish Swift and Anthony Harlan—exited the residence, the officers took them into custody.

Officers received permission to search the residence from the homeowner. During the search, the officers recovered two handguns: a .45 caliber pistol and a .22 caliber revolver. The firearms were found in the curtilage of the residence—one was located in a tire that was leaning against the house and the other from a trash can that was within a few feet of the house. Five .45 caliber shell casings were recovered in the location of the "shots fired call", and it was later determined that the casings were from the same .45 caliber pistol recovered by police during their search of the residence.

Swift and Harlan were transported to police headquarters and placed in an interrogation room together. An officer told them that a gunshot residue test would be conducted and that someone would be in to talk with them. The room was equipped with video and audio monitoring equipment, and officers, including Sergeant Gerald Baggett, monitored the conversation between Swift and Harlan. At the suppression hearing, Sergeant Baggett testified that Swift asked Harlan "if a gun was used or shot, would it leave gun prints." (Suppression Hr'g Tr. 44.) Sergeant Baggett understood the "gun prints" question to refer to gunshot residue. Swift also made statements to Harlan which indicated Swift was aware that officers were able

to monitor them while they were in the room and he believed officers were monitoring their conversation.

After approximately 18 minutes, Officer Duffek entered the room to advise both Swift and Harlan of their Miranda[2] rights. Officer Duffek did so by reading the Omaha Police Department's Rights Advisory Form to Swift and Harlan. As he began reading the form, Swift, demonstrating a familiarity with the form, stated, "That last question, no." The final question on the form is, "Knowing your rights in this matter are you willing to talk to me now?" Swift then asked Officer Duffek why he and Harlan were being detained, and Officer Duffek showed him photos of the two firearms found at the residence. Officer Duffek then left the interrogation room and went into the monitoring room.

After Officer Duffek left, Swift commented to Harlan that he had touched the gun, but he hoped his fingerprints would not appear on the gun. When Officer Duffek returned, he again read the Miranda form to Swift and Harlan. Swift agreed at that time to give a statement to the police, but later he refused to cooperate and provided no additional information.

Swift moved to suppress the statements he made to Harlan while at the police station. A magistrate judge[3] issued a Report and Recommendation (R&R), recommending that the district court deny the suppression motion as to Swift's first statement made prior to Officer Duffek's presentation of the Miranda rights, but grant the motion as to the statement made after Swift indicated that he did not wish to talk to the officers. After both Swift and the government filed objections to the R&R, the district court entered an order denying the suppression motion as to both statements.

---

[2]Miranda v. Arizona, 384 U.S. 436 (1966).

[3]The Honorable F. A. Gossett, United States Magistrate Judge for the District of Nebraska.

Swift proceeded to trial. During the closing argument, Swift's attorney questioned why the government had failed to present the tape recording made while Swift was in the interrogation room, arguing that it was the best evidence of what occurred. In rebuttal, the government responded:

> [Defense counsel] also said it's not his job to put forth evidence to you, how come we didn't present the interview, how come you don't get to look at it for yourself.
> It's [defense counsel's] job, you bet, to protect that man sitting next to him. It's [defense counsel's] job to make sure --

(Trial Tr. 269.) At that point, defense counsel objected to the argument on the basis that the prosecution was attempting to shift the burden of proof to the defendant. In a side bar discussion, defense counsel renewed his objection, and he moved for a mistrial or alternatively requested that the jury be instructed that the burden of proof is not on the defendant. The court sustained the objection and took the mistrial motion under consideration. After the side bar conference, the court instructed the jury as follows:

> Ladies and gentlemen, the difficulty is that the defendant never has an obligation under the law to present any evidence, and the burden never shifts to the defendant.
> And I believe what [the government] is trying to argue is that the testimony of the witness concerning statements in the interview room have been unrebutted, and there is a difference between that and the burden shifting to the defendant, because the burden never shifts to the defendant.
> You have to decide based on your recollection of the testimony[,] the quality of the testimony[,] and the credibility to be given to that testimony, but the burden never shifts to the defendant to present counter testimony.

(Trial Tr. 271-72.)

After the jury returned a guilty verdict, the district court overruled the mistrial motion on the basis of the curative instruction given during the closing argument. At sentencing, the district court imposed a term of 60 months imprisonment.

## II.

Swift raises two grounds on appeal: (1) that the district court erred in denying his motion to suppress statements Swift made while being held in the interrogation room and (2) that the district court erred in denying his motion for mistrial based on the statement made by the government during closing argument.

## A.

This court reviews legal determinations in the denial of a motion to suppress de novo but reviews the underlying factual determinations for clear error. United States v. Coleman, 349 F.3d 1077, 1083 (8th Cir. 2003). Miranda rights are triggered only when a defendant is being interrogated in police custody. United States v. Hatten, 68 F.3d 257, 261 (8th Cir. 1995). "We have repeatedly held that '[a] voluntary statement made by a suspect, not in response to interrogation, is not barred by the Fifth Amendment and is admissible with or without the giving of Miranda warnings.'" Id. at 262 (quoting Rhode Island v. Innis, 446 U.S. 291, 299 (1980)). "Interrogation" under Miranda is "express questioning," or "words or actions . . . that the police should know are reasonably likely to elicit an incriminating response." Innis, 446 U.S. at 301.

We recently decided a case with analogous facts. In United States v. Hernandez-Mendoza, 600 F.3d 971 (8th Cir. 2010), a highway patrol trooper pulled over a car being driven by Hernandez-Mendoza for speeding. Id. at 974. After a drug dog alerted to the presence of narcotics, the trooper was able to locate methamphetamine and cocaine hidden in the car. Id. A second trooper arrived to

transport Hernandez-Mendoza and his passenger, Martinez, to the South Dakota Highway Patrol Office. Id. Both suspects were placed in the second trooper's patrol car which, unbeknownst to the suspects, was equipped with recording equipment which the trooper had activated. Id. At one point, the trooper left the two suspects alone in the vehicle and the recording equipment captured a conversation between them. Id. Martinez sought to suppress the statements he made during the recorded conversation with Hernandez-Mendoza. Id. at 974-75. We affirmed the district court's denial of the suppression motion, explaining:

> [The trooper's] act of leaving the appellants alone in his vehicle, with a recording device activated, was not the functional equivalent of express questioning. [The trooper] may have expected that the two men would talk to each other if left alone, but an expectation of voluntary statements does not amount to deliberate elicitation of an incriminating response. "Officers do not interrogate a suspect simply by hoping that he will incriminate himself." Arizona v. Mauro, 481 U.S. 520, 529 (1987). [The trooper] did not question the suspects or engage in psychological ploys of the sort characterized as interrogation by the Supreme Court in Innis. See 446 U.S. at 299. He had legitimate security reasons for recording the sights and sounds within his vehicle, see Mauro, 481 U.S. at 528, and the appellants had no reasonable expectation of privacy in a marked patrol car, which is "owned and operated by the state for the express purpose of ferreting out crime." United States v. Clark, 22 F.3d 799, 801 (8th Cir. 1994).

Hernandez-Mendoza, 600 F.3d at 977.

The reasoning of Hernandez-Mendoza is controlling here. Even though officers may have hoped that Swift or Harlan would make incriminating statements when left alone, that action was not express questioning. Nor does that action rise to the "functional equivalent" of a police interrogation, as that action was unlikely to "'subjugate the individual to the will of his examiner' and thereby undermine the privilege against compulsory self-incrimination." See Innis, 446 U.S. at 299, 301

-6-

(quoting Miranda, 384 U.S. at 450). Further, Swift had no reasonable expectation of privacy while being detained in the interrogation room at the police station, and Swift even recognized the likelihood that officers were watching him and Harlan. We therefore affirm the district court's denial of Swift's motion to suppress.

B.

Swift also appeals the district court's denial of his mistrial motion made in response to the prosecutor's comments in closing argument. "To obtain a reversal for prosecutorial misconduct, the defendant must show that (1) the prosecutor's remarks were improper, and (2) such remarks prejudiced the defendant's rights in obtaining a fair trial." United States v. King, 36 F.3d 728, 733 (8th Cir. 1994). "If we find the comments were improper, we consider the cumulative effect of the improprieties, the strength of the evidence against the defendant, and whether the district court took any curative action." United States v. Milk, 447 F.3d 593, 602 (8th Cir. 2006). We review the denial of a mistrial based on prosecutorial misconduct for an abuse of discretion. United States v. Conroy, 424 F.3d 833, 840 (8th Cir. 2005).

Swift argues that the prosecutor, through comments in closing argument, attempted to shift the burden of proof to Swift. If true, such remarks would be improper. See United States v. Burns, 432 F.3d 856, 861 (8th Cir. 2005) ("[T]he prosecution 'may not improperly suggest that the defendant has the burden to produce evidence.'" (quoting United States v. Balter, 91 F.3d 427, 441 (3d Cir. 1996)). Although the government disagrees that its comments were intended to shift the burden to Swift, the district court had no difficulty in sustaining Swift's objections to the comments. The government argues in the alternative that even if its comments were improper, Swift's right to obtain a fair trial was not prejudiced.

Even if the prosecutor's comments suggested that Swift had a burden to present certain evidence, which would have been improper, the comments were not

prejudicial. The comments came after two days of trial testimony, and the district court immediately instructed the jury that the burden of proof remained with the government and that the prosecutor's comments were an attempt "to argue . . . that the testimony of the witness concerning statements in the interview room have been unrebutted." (Trial Tr. 272.) Therefore, even if the comments were improper, Swift was not deprived of a fair trial. See Conroy, 424 F.3d at 840.

## III.

Accordingly, we affirm.

_____