# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58351-8-II |
| Respondent, | |
| v. | |
| | UNPUBLISHED OPINION |
| JONATHAN DANIEL SMITH | |
| Appellant. | |

MAXA, J. – Jonathan Smith appeals his second degree murder conviction. The conviction arose from a fight between Smith and Roger Hudyma that resulted in Hudyma's death.

We hold that (1) the trial court did not err when it ruled that a statement Smith made to himself while being held in a recorded interview room was admissible because it was not a product of custodial interrogation and was voluntarily made; (2) Smith's assertions in a statement of additional grounds (SAG) lack merit or rely on matters outside the record; and (3) as the State concedes, the crime victim penalty assessment (VPA) must be stricken from the judgment and sentence. Accordingly, we affirm Smith's conviction, but we remand for the trial court to strike the VPA from his judgment and sentence.

FACTS

*Background*

In January 2023, sheriff's deputies responded to a disturbance at a motel in Clark County. The officers knocked on the door of the room where the disturbance had been reported. A few minutes later, Smith opened the door with blood on his hands and face. Hudyma's body was in the back of the hotel room, and he later was declared dead. Ashley Herrera, Smith's girlfriend, was present at the scene.

The officers detained Smith. While still at the motel, an officer asked Smith a question. Smith said he would not speak to the officer without an attorney present. Officers did not ask Smith any other questions.

The officers transported Smith to the local precinct and detained him in an interview room. Smith was shirtless and bleeding from a wound on his forehead, and his hands were cuffed in front of him. A detective informed Smith that the interview room was audio and video recorded. The detective also advised Smith of his constitutional rights under *Miranda*. Smith said that he did not understand his rights and that he was not willing to speak to the detective without an attorney. The detective did not ask Smith any questions.

After the detective left, Smith remained in the interview room by himself for approximately 90 minutes. While he was alone in the interview room, Smith said to himself, "I had to do it. I had to do it." Clerk's Papers at 5. The statement was picked up by the recording equipment.

The State charged Smith with second degree murder. The trial court held a CrR 3.5 hearing to determine the admissibility of the Smith's recorded statement, "I had to do it," made

while in the interview room. The trial court ruled that the statement was not the result of custodial interrogation and was voluntarily made, and therefore was admissible at trial.

*Jury Trial*

At trial, the State played for the jury a portion of the recording from the interview room that contained Smith's statements. However, because of the poor quality of the recording, a detective testified that he had listened to the recording with headphones and had been able to hear what Smith said. The detective testified that he heard Smith say on the recording, "I had to do it, I had to do it." Rep. of Proc. at 210.

Smith testified that he and Hudyma were in the motel room together when Hudyma, who was holding a knife, threatened to kill Smith and rape Smith's girlfriend. Smith stated that Hudyma hit Smith with the knife, and Smith fought back. Smith struck Hudyma many times until he went limp. Based on this testimony, Smith claimed self-defense.

The State did not reference Smith's recorded statement from the interview room in its closing argument or in its rebuttal argument.

The jury found Smith guilty of second degree murder. In the judgment and sentence, the trial court imposed a mandatory VPA. The trial court found that Smith was indigent under RCW 10.101.010(3).

Smith appeals his conviction and the assessment of the VPA.

## ANALYSIS

A.    ADMISSIBILITY OF RECORDED STATEMENTS

Smith argues that he was subjected to custodial interrogation when he was held in the interrogation room by himself, and his recorded statement, "I had to do it," should have been ruled inadmissible because he had invoked his right to an attorney. We disagree.

1.    Legal Principles

The purpose of a CrR 3.5 hearing is to prevent "the admission of *involuntary, incriminating* statements."  *State v. Williams*, 137 Wn.2d 746, 751, 975 P.2d 963 (1999).  Under CrR 3.5, the trial court must conduct a hearing before admitting a defendant's statement into evidence.

The Fifth Amendment to the United States Constitution states that "[n]o person ... shall be compelled in any criminal case to be a witness against himself."  Article I, section 9 of the Washington Constitution states "[n]o person shall be compelled in any criminal case to give evidence against himself."  "Both provisions guarantee a defendant the right to be free from self-incrimination, including the right to silence."  *State v. Pinson*, 183 Wn. App. 411, 417, 333 P.3d 528 (2014).

A person who is in custody must be given *Miranda* warnings – the right to remain silent and the right to an attorney – before being subjected to interrogation.  *State v. Gardner*, 32 Wn. App. 2d 320, 338, 556 P.3d 186 (2024).  If the accused invokes the right to an attorney, all questioning must stop.  *Id.*

Interrogation by law enforcement includes "express questioning or its functional equivalent."  *Rhode Island v. Innis*, 446 U.S. 291, 300-01, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980).  The functional equivalent of express questioning is "words or actions . . . that the police should know are reasonably likely to elicit an incriminating response."  *Id* at 301.  However, incriminating statements that are not responsive to an officer's questioning are not products of interrogation.  *In re Pers. Restraint of Cross*, 180 Wn.2d 664, 685, 327 P.3d 660 (2014).

We review challenged findings of fact entered after a CrR 3.5 hearing for substantial evidence and review de novo whether the trial court's conclusions of law are supported by its findings of fact. *State v. Rosas-Miranda*, 176 Wn. App. 773, 779, 309 P.3d 728 (2013).

2. Analysis

There is no question that Smith was in custody when he was being held in the interview room. And it is undisputed that he was informed of his *Miranda* rights, he invoked the right to an attorney, and he was asked no questions after that point.

However, it also is undisputed that Smith did not make the challenged statement in response to an officer's express questioning. He was alone in the interview room when he spontaneously made the statements. Incriminating statements that are not responsive to an officer's questioning are not products of interrogation. *Cross*, 180 Wn.2d at 685.

Smith argues that holding him alone in the interview room for a long period without the attorney he had requested was the functional equivalent of an interrogation. He claims that law enforcement exploited his situation – he was shirtless, bleeding, and handcuffed – and had reason to believe that the psychological and physical pressure would cause Smith to cave and make incriminating statements that could be recorded. Smith contends that holding him under these conditions was a continuation of his interrogation.

Courts in other jurisdictions have rejected similar arguments. In *United States v. Hernandez-Mendoza*, a law enforcement officer detained two people in his patrol vehicle and left them alone. 600 F.3d 971, 974 (8th Cir. 2010). A video recorder in the vehicle recorded an incriminating conversation between the two people. *Id.* The court rejected the argument that activating the recording device was the functional equivalent of a custodial interrogation. *Id.* at 976-77. The court stated,

[The officer's] act of leaving the appellants alone in his vehicle, with a recording device activated, was not the functional equivalent of express questioning. [The officer] may have expected that the two men would talk to each other if left alone, but an expectation of voluntary statements does not amount to deliberate elicitation of an incriminating response. "Officers do not interrogate a suspect simply by hoping that he will incriminate himself."

*Id.* at 977 (quoting *Arizona v. Mauro*, 481 U.S. 520, 529, 107 S. Ct. 1931, 95 L. Ed. 2d 458 (1987)).

In *United States v. Swift*, officers placed two suspects alone in an interrogation room together. 623 F.3d 618, 620 (8th Cir. 2010). Officers monitored their conversations, and they heard incriminating statements. *Id.* The court affirmed the denial of a suppression motion, finding the reasoning of *Hernandez-Mendoza* controlling. *Id.* at 623. The court stated, "Even though officers may have hoped that Swift or Harlan would make incriminating statements when left alone, that action was not express questioning. Nor does that action rise to the 'functional equivalent' of a police interrogation." *Id.*

Other cases have refused to suppress statements made by people left alone in a recorded law enforcement vehicle. *United States v. Colon*, 59 F. Supp. 3d 462, 468 (D. Conn. 2014) (ruling that placing suspects in a police car "in hopes that they might make incriminating statements" did not amount to interrogation); *State v. Younger*, 556 P.3d 838, 855 (Kan. 2024) (stating that the defendant "was not constitutionally protected from incriminating herself by making spontaneous statements").

Conversely, Smith cites no authority for the proposition that leaving a defendant in an interview room constitutes interrogation. Instead, Smith argues that his case is similar to *State v. Wilson*, 144 Wn. App. 166, 181 P.3d 887 (2008). In *Wilson*, the defendant was charged with felony murder after stabbing her ex-boyfriend. *Id.* at 170. While in police custody, the defendant referenced an attorney during the interrogation and the police terminated the

interrogation. *Id*. Later, believing that the defendant had been married to the victim, a deputy entered the interview room and told her that her husband had died from his injuries. *Id*. at 182-83. The defendant collapsed and said that she did not mean to kill him. *Id*. at 183.

The court held that the officer should have known that telling the defendant about the death was reasonably likely to elicit an incriminating response. *Id*. at 184-85. The court reasoned that, because the officer elicited the defendant's statement after she had invoked her right to counsel, admission of the statement during trial was a constitutional error. *Id*. at 185.

But this case is different from *Wilson*. Officers did not make any statements to Smith that were likely to elicit an incriminating response. Indeed, no one said anything at all to Smith before he made the statement that "he had to do it" while alone in the interview room.

As stated above, police interrogation includes "express questioning," or "words or actions . . . that the police should know are reasonably likely to elicit an incriminating response." *Innis*, 446 U.S. at 301. Law enforcement did not engage in any express questioning or actions reasonably likely to elicit an incriminating response from Smith in the recorded interview room.

We conclude that Smith's recorded statement that "he had to do it" made in the interrogation room was not a product of custodial interrogation and was made voluntarily. Therefore, we hold that the statement was not obtained in violation of Smith's constitutional rights.[1]

---

[1] Any error also was harmless. Rather than being incriminating, Smith's statement actually was consistent with his self-defense theory. Probably for that reason, the State did not mention the statement in closing.

B.        SAG CLAIMS

        1.    Defense of Others Instruction

Smith asserts that the trial court erred when it failed to give a defense of others jury instruction, claiming that Herrera could have been in the room with him at the time of the fight. He argues that the State did not prove that Herrera was not in the room, and therefore that a defense of others instruction should have been given. We disagree.

Smith testified that he was in the hotel room alone when the fight with Hudyma began. At one point, Smith called for help. Herrera returned to the room to help him get band-aids and call for help. Smith did *not* testify that Herrera was in the room with him for the duration of the fight with Hudyma. And the trial court excluded Smith's testimony that referenced defending Herrera because there was no evidence that she was in imminent danger. Smith does not challenge that ruling. Accordingly, we reject this argument.

        2.    Suppression of Evidence

Smith asserts that in the photos of the hotel room, there was a jacket belonging to Hudyma that contained knives and a methamphetamine pipe. He claims that the State illegally suppressed the contents of the jacket while Smith was not present in the court. Smith argues that the contents of the jacket showed intent to cause Smith harm and would have impacted the jury's decision.

This assertion relies on matters outside the record. As a result, we cannot consider it on direct appeal. *State v. Alvarado*, 164 Wn.2d 556, 569, 192 P.3d 345 (2008). This assertion is more properly raised in a personal restraint petition. *Id*. Therefore, we decline to consider this claim.

C.      CRIME VICTIM PENALTY ASSESSMENT

Smith argues, and the State concedes, that the $500 VPA should be stricken from his judgment and sentence. We agree.

Effective July 1, 2023, RCW 7.68.035(4) prohibits courts from imposing the VPA on indigent defendants as defined in RCW 10.01.160(3). *See State v. Ellis*, 27 Wn. App. 2d 1, 16, 530 P.3d 1048 (2023). For purposes of RCW 10.01.160(3), a defendant is indigent if they meet the criteria in RCW 10.101.010(3)(a)-(c). Although this amendment took place after Smith's sentencing, it applies to cases pending on appeal. *Ellis*, 27 Wn. App. 2d at 16.

The trial court determined that Smith was indigent under RCW 10.101.010(3)(a)-(c). Therefore, we remand for the trial court to strike the $500 VPA from the judgment and sentence.

CONCLUSION

We affirm Smith's conviction, but we remand for the trial court to strike the VPA from his judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

VELJACIC, A.C.J.

LEE, J.